**In re PAOLI.**
No. 55240.

District Court, N. D. California, S. D.
March 11, 1943.

Joseph L. Sweeney, of San Francisco, Cal., for petitioner.

Daniel H. Lyons, of San Francisco, Cal., United States Naturalization Examiner.

ST. SURE, District Judge.

Application for naturalization under 8 U.S.C.A. § 710, where an alien has married a citizen of the United States, and a three instead of five-year period of residence is required. The petition was filed on September 10, 1941.

On December 1, 1938, petitioner was arrested for violation of Section 3 of the California Alcoholic Beverage Control Act, Stats.1935, p. 1123, 1125, a felony. He pleaded guilty in the state court and was placed upon probation for a period of three years. While the application was pending petitioner applied to the state court for relief under § 1203.4 of the California Penal Code, which provides as follows: "Every defendant who has fulfilled the conditions of his probation for the entire period thereof, or who shall have been discharged from probation prior to the termination of the period thereof, shall at any time thereafter be permitted by the court to withdraw his plea of guilty and enter a plea of not guilty; or if he has been convicted after a plea of not guilty, the court shall set aside the verdict of guilty; and in either case the court shall thereupon dismiss the accusations or information against such defendant, who shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted. The probationer shall be informed of this right and privilege in his probation papers. The probationer may make such application and change of plea in person or by attorney authorizing(ed) in writing; provided, that in any subsequent prosecution of such defendant for any other offense, such prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed."

He was permitted to change his plea to "not guilty", the charge against him was dismissed, and the record of his conviction expunged.

The Government moves to deny the petition on the ground of "lack of good moral character as provided for in the Naturalization Law", the motion being predicated on the above-mentioned offense and petitioner's plea of guilty.

Petitioner contends that the proceeding under § 1203.4 of the Penal Code wipes out the crime so completely that the court should not consider it in determining his moral character. He cites Sherry v. Ingels, 34 Cal.App.2d 632, 94 P.2d 77, 79, where the State Motor Vehicle Department refused to issue a probationary driver's license to plaintiff on the ground that he had been convicted of two separate offenses of driving while drunk. Plaintiff contended that he was convicted of only one offense since the other was set aside by the application of § 1203.4 of the Penal Code. The court held that the second conviction was "rendered ineffective and obliterated" by the proceeding, and that plaintiff was therefore only subject to the provisions of the law relating to one who has suffered one conviction. He calls attention to People v. Mackey, 58 Cal.App. 123, 208 P. 135, 138, where the question before the court was whether a defendant who had proceeded under this section of the Penal Code could subsequently be impeached as a witness by reason of his former conviction. The court concluded that the purpose of the section was to "wipe out absolutely the entire proceeding in question in a given case, and to place the defendant in the position which he would have occupied in all respects as a *citizen* if no accusation or information had ever been presented against him."

The section was thereafter modified to provide that the offense could be pleaded in a subsequent indictment and could be used for the purpose of impeaching a defendant in a subsequent case wherein he was a defendant.

It would therefore appear but for the stated exceptions that section has as a matter of law a retroactive effect, and the criminal proceeding has been expunged.

Directly in point is the recent decision In re Ringnalda, United States District Court, Southern District of California, 48 F.Supp. 975. There the petitioner for citizenship had been convicted in the state court of negligent homicide and given a year's probation. He later proceeded under § 1203.4 of the Penal Code and the charge was dismissed. The Government recommended rejection of the petition on the ground that petitioner had not proved good moral character for a period of three years immediately preceding the filing of the petition. Judge Yankwich concluded that " * * * we should not deprive an alien, otherwise worthy, of this privilege [citizenship] by attaching to one of his acts a disability which the sovereign against whom he committed it has fully and entirely forgiven and wiped out", and that in effect the stain on petitioner's character was removed by the state proceeding. His decision is further based on the rule that where sentence is suspended there is no final judgment of conviction, so that after the plea was changed from guilty to not guilty and the proceeding was dismissed, there remained no evidence of the conviction of an offense upon which the Government could ground an objection. He also found that the offense was merely a technical one.

■ It has repeatedly been held that naturalization is a privilege, not a right, and that the burden is on the petitioner to establish the facts that entitle him to that privilege. In re Warkentin, 7 Cir., 93 F. 2d 42, certiorari denied 304 U.S. 563, 58 S. Ct. 943, 82 L.Ed. 1529; United States v. Schwimmer, 279 U.S. 644, 49 S.Ct. 448, 73 L.Ed. 889; United States v. Rodgers, 3 Cir., 185 F. 334; United States v. Akhay Kumar Mazumdar, D.C., 296 F. 173, affirmed, 9 Cir., 299 F. 240; United States v. De Francis, 60 App.D.C. 207, 50 F.2d 497. Among the facts which he must prove is that he has been of good moral character for the statutory period prior to the filing of his petition.

■ Good moral character is an intangible, not a technical thing. It results from the acts and conduct of the individual. It has been defined as "such a character as measures up to the standard of the average citizen of the community in which applicant resides." In re Hopp, D.C., 179 Fed. 561. In Re Spenser, Fed.Cas.No.13,234, 22 Fed.Cas. at p. 921, the court discussed the necessary elements of good moral character under the naturalization statutes, as follows:

"What is 'a good moral character' within the meaning of the statute may not be easy of determination in all cases. The standard may vary from one generation to another, and probably the average man of the country is as high as it can be set. * * *

"Upon general principles it would seem that whatever is forbidden by the law of the land ought to be considered, for the time being, immoral, within the purview of this statute. And it may be said with good reason that a person who violates the law thereby manifests, in a greater or less degree, that he is not 'well disposed to the good order and happiness' of the country."

■ The average citizen may be said to obey the law, and the decisions are substantially uniform in holding that the conviction of a felony shows bad moral character and bars the applicant from citizenship for the statutory period, or in extreme cases, forever.

The privileges provided for by the State in § 1203.4 offer an inducement to the defendant to comply faithfully with the terms of his probation and thereby reinstate himself in the eyes of society. The section provides a worthwhile reward for reformation and good behaviour, and thus aids the State in the prevention of crime. But so far as concerns the individual defendant, the act has been done, and no legal technicalities can change this fact.

■ If the circumstances are such that the state is willing to expunge the record of the crime, this fact may be persuasive in enabling the court before which application is made for citizenship to determine whether the character of the applicant is sufficiently good to permit his admission to citizenship, for technically there is no formal record remaining of a conviction. But it would hamper the court in the exercise of its discretion in determining the

important question of moral character, if it were bound to disregard entirely the original act of the applicant in committing the crime. The undisputed fact remains that the act was committed. The evidence before the court in the prior hearing shows a plea of guilty still on record, and the subsequent plea of not guilty did not signify a claim of innocence but was a technical plea permitted by § 1203.4. Whether the offender was punished or forgiven, the act continues to exist as an indication of the character of the applicant.

A man need not have been convicted of a felony for the court to determine that he is not of good character. Citizenship was denied a petitioner for failure to support his infant children in Norway (In re Nosen, D.C., 49 F.2d 817); and was denied in Application of Polivka, D.C., 30 F.Supp. 67, because petitioner's wife had obtained a divorce from him on the ground of cruel and barbarous treatment. Acts which would constitute only a misdemeanor may be sufficient to prevent the applicant from establishing good character, such as maintaining a disorderly hotel. In re Kornstein, D.C., 268 F. 172.

In other words, while the conviction of a felony within the statutory period, standing alone, practically removes the discretion of the court to find the applicant of good moral character, the court has discretion to find he is not of good moral character by reason of acts or behaviour for which he has never been arrested or prosecuted, if his conduct falls short of that of the "average citizen of the community in which applicant resides."

The court entrusted with the bestowal of the gift of citizenship should not be bound to any great extent by legal technicalities in determining whether the applicant is qualified. The primary purpose of the naturalization laws is to grant citizenship only to those who, it appears, will make good Americans, and the court is in the best position to determine whether this is so in any given case.

I conclude that while the court may disregard or forgive the crime of the applicant where the State has found him worthy of the rewards provided for in § 1203.4, it may also in its discretion, notwithstanding the action of the State, consider the nature of the crime, how it bears upon the character of the applicant, and whether it indicates the petitioner will not be a good citizen.

In the present case there is only one black mark against the petitioner, and while his act is defined as a felony, he was never punished as a felon, for the court considered him a good risk for probation and, as the subsequent dismissal indicates, was justified in its opinion. The violation was not a vicious one or one which necessarily involved moral turpitude; it was purely a statutory crime. Applicant has apparently conducted himself properly for more than four years since his conviction.

The motion of the Government is denied, and petitioner will be admitted to citizenship upon taking the required oath.