## In re SWENSON.
### No. 21338.

District Court, D. Oregon.
June 30, 1945.

No appearances noted.

JAMES ALGER FEE, District Judge.

The petitioner seeks to become a citizen of the United States by a judgment of this court. He has the imprimature of the examiner who, according to his statement in the record, is bound by instructions of the Central Office to recommend Swenson.[1] The examination of petitioner took place in open court. His knowledge of the form of government and the content of the Federal Constitution is sketchy and confused. He reads English with extreme difficulty and cannot interpret what he has read. But according to his testimony, he is sixty-seven years old. He has been in this country for forty-four years. He has never married.

The examiners have heretofore, in like proceedings, informed the court that under instructions from the Central Office, no attempt is made to establish educational qualifications of applicants for citizenship for persons over the age of sixty. Such a rule does not carry out the intent of the legislation governing admission to citizenship. Numerous examinations of applicants has shown that the Central Office regularly directs that a petitioner be recommended for admission although he cannot write or read English, and although he speaks and understands English very imperfectly. This practice contravenes the statute which requires that no one shall be naturalized upon his own petition "who cannot speak the English language."[2]

The ability to mumble a few common English words and banal expres-

---

[1] This practice is improper as has been shown before. See In re Boric, D.C., 61 F.Supp. 133, note 4.

[2] Act of October 14, 1940, c. 876, Title I, Subchap. III, § 304, 54 Stat. 1140, 8 U.S.C.A. § 704.

sions in a foreign accent, and to understand a few simple questions, or directions, does not demonstrate the capacity to speak English in connection with a requirement of attachment to the principles of the Federal Constitution.[3] The court would be entitled to consider the fact that admission of applicant would make him a citizen of the State of Oregon as well as of the United States. Literacy is required for the exercise of civil rights in this state.[4]

■ It is of no avail to urge that the native-born need not possess these qualifications. The alien is only entitled to citizenship when he proves he possesses the statutory requisites. Any reasonable doubt should be resolved against the applicant.[5] A clear exposition of this feature is contained in the opinion of Judge Yankwich entitled United States v. Bergmann, D.C., 47 F.Supp. 765, 766. It is there said:

"Naturalization is a privilege. It is granted only upon strict compliance with the conditions laid down by the Congress. 8 U.S.C.A. § 701 et seq. As said by the Supreme Court in Luria v. United States, 1913, 231 U.S. 9, 23, 34 S.Ct. 10, 13, 58 L.Ed. 101: 'These requirements plainly contemplated that the applicant, if admitted, should be a citizen in fact as well as in name,—that he should assume and bear the obligations and duties of that status as well as enjoy its rights and privileges. In other words, it was contemplated that his admission should be mutually beneficial to the government and himself, the proof in respect of his established residence, moral character, and attachment to the principles of the Constitution being exacted because of what they promised for the future, rather than for what they told of the past.' See United States v. Beda, 2 Cir., 1941, 118 F.2d 458, 459; Samras v. United States, 9 Cir., 1942, 125 F.2d 879, 881.

"Thus, in many respects, more is demanded of an alien than of a native-born citizen. A native-born citizen need not be literate to exercise his civil rights, unless the state law so requires. But an alien must know the English language. 8 U.S. C.A. § 704. No matter how well educated he might be in other languages, ignorance of English is a bar to citizenship.

"A native-born citizen may be a conscientious objector. An alien, even a woman, who refuses to bear arms, cannot be naturalized. United States v. Schwimmer, 1929, 279 U.S. 644, 49 S.Ct. 448, 73 L.Ed. 889; United States v. Macintosh, 1931, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302; United States v. Bland, 1931, 283 U.S. 636, 51 S.Ct. 569, 75 L.Ed. 1319; In re Warkentin, 7 Cir., 1937, 93 F.2d 42.

"A native-born citizen may be immoral. And, unless he is convicted of a felony, he cannot be denied his civil rights. But an alien must be of good moral character before he can be admitted to citizenship. 8 U.S.C.A. § 707.

"More, a native-born citizen may be opposed to the principles of our constitutional government. And, unless he actually advocates its overthrow, by force, he may go unmolested. But an alien must be 'attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.' 8 U.S.C.A. § 707. (And see United States v. Tapolcsanyi, 3 Cir., 1930, 40 F.2d 255, 257; Kjar v. Doak, 7 Cir., 1932, 61 F.2d 566, 569.)"[6]

■ The question as to whether the petitioner should be admitted is very much in balance as a result of his examination to this point. The subsequent testimony developed a situation which is conclusive. The petitioner admitted under pressure that he had been making moonshine in 1922, or 1923, and was driving while intoxicated about 1924, and was arrested on each occasion. Within the last five years he has been arrested and convicted of drunkenness three times, according to statements made on the preliminary examination. While these matters are not controlling alone, the attitude of petitioner on the stand regarding them indicated a desire to mislead the court and conceal the facts.

The court asked whether in view of the attitude of the petitioner, and the matters

---

[3] Ex parte Shahid, D.C., 205 F. 812; In re Vasicek, D.C., 271 F. 326; In re Goldberg, D.C., 269 F. 392; In re Meakins, D.C., 164 F. 334; In re Kanaka Nian, 6 Utah 259, 21 P. 993, 4 L.R.A. 726.

[4] O.C.L.A. § 81-103; see Petition of Katz, D.C., 21 F.2d 867.

[5] In re Boric, supra.

[6] The above case was reversed upon the grounds that in a cancellation proceeding the evidence must be clear, unequivocable and convincing, but nothing was said which militated against the expressions above quoted. See Bergmann v. United States, 9 Cir., 144 F.2d 34.

disclosed upon examination, the examiner desired to adhere to his former recommendation. The answer was as follows: "We are bound by instructions of the Central Office."

The court concludes that the petitioner has not the moral character, or other qualifications to be admitted as a citizen of the United States.

Detailed findings will be prepared as a basis for an order denying admission.