### Petition of PLYWACKI.
### No. 12393.

United States District Court
D. Hawaii.
Oct. 23, 1953.

John J. Kelleher, Naturalization Examiner, for the Government.

McLAUGHLIN, Chief Judge.

Heretofore this petition was denied because of the petitioner's refusal as an atheist to take the oath of allegiance prescribed by Congress. Petition of Plywacki, D.C.1952, 107 F.Supp. 593.

An appeal was taken by petitioner to the Ninth Circuit Court of Appeals, with the assistance of the American Civil Liberties Union of Northern California. Although the Attorney General had not previously appeared and taken a position in this case, he did the astounding thing of appearing in the Court of Appeals and confessing error. Not noting that the Attorney General had nothing to confess as having induced error below, the Court of Appeals automatically reversed without examining the merits. Plywacki v. United States, 1953, 205 F.2d 423.

Before the reversal by the Court of Appeals, petitioner moved to Oregon and there attended Oregon State College. On May 26, 1953, petitioner executed a Form N–455, "Application for Transfer of Petition for Naturalization", which on its face said that the petitioner had subscribed and sworn to his representations therein made before Edith Buckingham, a notary public of the State of Oregon, at Corvallis, Oregon, to wit:

Subscribed and sworn to before me by the above named petitioner at Corvallis, Oregon, this Twenty-sixth day of May, 1953.

Edith Buckingham (Signed)    (Seal)
Notary Public for Oregon

My Commission Expires Apr. 7, 1957

This not being the first time that the petitioner ostensibly had taken an oath

to preliminary or collateral matter while still professing atheism, noting again petitioner's inconsistency, the Court ordered the Immigration and Naturalization Service to investigate and report. On or about September 18, 1953, it did so, but as the notary had not been interviewed, a further investigation and report was ordered. From the two reports of August 20, 1953, and September 18, 1953, as supplemented October 5, 1953, it appears that the petitioner advised the investigator that he did not swear to his transfer application and the notary concurred. Indeed, the notary asserted that she never takes a person's oath as she "figures it is up to them" and hence just observes the subscription.

Without withdrawing the pending transfer application under date of October 6, 1953, petitioner executed a new or second Form N–455 application, at the end of which he stated he "subscribed and affirmed" the statements therein made before the same notary, and she signed her name, stated the term of her commission, and affixed her notarial seal. Appended is a separate statement reading:

I, Wladyslaw Plywacki, do solemnly affirm that the information provided by me on the Application for Transfer of Petition for Naturalization, Number 12393, on this sixth day of October, 1953, is the truth, the whole truth, and nothing but the truth.

Wladyslaw Plywacki (Signed)

Below this statement the notary again signed her name and affixed the date, her seal, and extent of her commission.

This second application for transfer comes to me approved October 9, 1953, by District Director Elmer E. Poston, for he has found petitioner does in fact have a bona fide residence in Oregon.

## Opinion.

Obviously petitioner's second transfer application does not comply with the Immigration and Naturalization Service's Regulation No. 334.17(a), Federal Register, December 19, 1952, which under 8 U.S.C. § 727, § 327 of the Nationality Act of 1940,[1] has the force and effect of law. Indeed, petitioner's position as to this application has the same congenital defect as has his position upon his pending petition for citizenship. To affirm by nothing that the truth is being asserted adds up in law, also, to nothing. Few realize that an affirmation is allowed in lieu of an oath—a swearing—in deference to a person's religious beliefs and concludes by affirming by reference to a Supreme Being—witness the Society of Friends and Jehovah's Witnesses. See 28 U.S.C. §§ 453, 951, and 5 U.S.C. §§ 16, 21 and 21a and 21b. An affirmation by Wladyslaw Plywacki, a human being, that he is stating the truth provides no guarantee of veracity nor basis for a remedy in the event of falsity. Indeed, as before stated the atheist philosophy upon which petitioner predicates his position demonstrates a lack of attachment to the United States Government's first principle: a belief in a Creator, from whom the Founders proclaimed come man's unalienable rights subsequently guaranteed by the Constitution.

Despite petitioner's trifling with the legal process by today ostensibly taking an oath and then saying, in effect: "I didn't mean it—I didn't do it—See, I affirm, by myself", being advised by District Director Poston that the petitioner in fact now resides in Oregon, the Court upon its own motion in the public interest will transfer the petition to the Oregon Federal court if it will accept the same.

It is obviously in the public interest to have judicially determined as speedily as possible whether by a quiet confession of error by the Executive the American philosophy of government has been materially changed.

The common good will be subserved also by having a different judge come to grips with the legal problems arising from this record. As they touch our national fundamentals, I would like to sug-

---

1. See Immigration and Nationality Act, § 332, 8 U.S.C.A. § 1443.

gest that the Federal court in Oregon invite the Attorney General to appear, to file a brief, and present argument in defense of his position taken in the Circuit Court of Appeals for the Ninth Circuit—if he still adheres to it. Too, the size, shape and shadows of this case would seem to call for invited amicus help from the American Bar Association.

Should the ultimate result be that the Federal court in Oregon also declines to admit petitioner to citizenship either by a denial of his petition for lack of attachment to the principles of our Nation, or by its refusal to administer an oath or affirmation unknown to the law, petitioner then may utilize available appellate review procedures and thus obtain a decision on the merits by a higher court.

If, perchance, the result be otherwise, there is always the next case which may provide the appellate vehicle for a timely decision to repair the national damage, and in which the hope can be expressed that the lower court will not be sold short in the court of appeals and that such court will look for itself beyond any confessed error into the merits of the controversy.

### Order.

For the reasons above given, upon the Court's own motion it is hereby ordered and decreed that the petition for naturalization filed in this Court, being No. 12393, shall upon approval of such transfer by the United States District Court for the District of Oregon, be transferred to said court.