### Petition for Naturalization of Minas Michael ORPHANIDIS.

Petition No. 3963.

United States District Court
N. D. West Virginia,
at Wheeling.
Dec. 8, 1959.

A. W. Petroplus and George N. Caravasios, Wheeling, W. Va., for petitioner.

Ned Haimovitz, Designated Naturalization Examiner, Pittsburgh, Pa., for the Government.

HARRY E. WATKINS, Chief Judge.

The question presented is whether petitioner has established good moral character for a period of five years immediately preceding October 1, 1958, the date he filed his petition for naturalization.

On October 1, 1958, the date his petition was filed, petitioner testified under oath that he had been arrested in 1953 for a liquor violation and was fined $106, but had suffered no other arrests. A later investigation by the examiner revealed that he had been arrested on other occasions. On January 16, 1956, he was arrested on a charge of driving on an expired operator's license and paid a fine of $25 and costs. On January 28, 1958, he was arrested on a charge of allowing minors to play pin-ball machines, which charge was dismissed. On the same date he was arrested on a charge of assault and was found not guilty.

Petitioner was accorded a further preliminary examination on February 5, 1959, at which time he was represented by counsel. When confronted with these other arrests which the investigation had uncovered, his explanation was that he had not considered them arrests and, therefore, did not feel that he was giving false testimony during the preliminary examination by not admitting them. At this same hearing on February 5, 1959, petitioner admitted that he had been selling liquor at his place of business in Wheeling, West Virginia,

since April, 1955, and was still selling it. He testified that he sold such liquor by the drink and sold from two to four bottles of liquor weekly and that he knew that he was violating the laws and ordinances of the City of Wheeling and State of West Virginia by such sale.

Good moral character required by Section 316(a) (8 U.S.C.A. § 1427(a)) of the Immigration and Nationality Act has never been defined by statute. The courts have created a more or less flexible judicial standard by which the moral character of each applicant is to be measured. Generally, the courts have held that "good moral character" is evidenced by that conduct which measures up to the standards of the average citizen of the community in which the alien resides. Repouille v. United States, 2 Cir., 165 F.2d 152. Evidence of crimes committed prior to the five-year statutory period may be received and considered with other evidence in determining whether petitioner has shown good moral character within the statutory period and at the time of application, but it is not permissible to base denial of naturalization on crimes committed prior to the five-year period. To do so would be to add a condition to the statute not contained therein. Marcantonio v. United States, 4 Cir., 185 F.2d 934. "The opportunity to become a citizen of the United States is said to be merely a privilege, and not a right." Tutum v. United States, 270 U.S. 568, 578, 46 S.Ct. 425, 427, 70 L.Ed. 738. "Under the law the burden is on the petitioner to establish good moral character only during the five-year period, not earlier." Petition of Zele, 2 Cir., 140 F.2d 773, 776. A liberal construction has been given the statute so as to sanction forgiveness after the expiration of five years from the date of a disbarring misdeed. Marcantonio v. United States, supra.

It is stipulated "that there are a substantial number of restaurants, hotels and clubs in the City of Wheeling who sell liquor by the drink in violation of the law of the City of Wheeling and State of West Virginia" and "that the liquor laws of the City of Wheeling and State of West Virginia are not being enforced in the City of Wheeling." The fact that others violate the law and that the officers do not enforce the law does not relieve petitioner of his moral obligation to obey the law.

In United States v. Gerstein, 1918, 284 Ill. 174, 119 N.E. 922, 1 A.L.R. 318, the Court said that a saloon-keeper, who habitually violated the State Sunday closing law for more than four years prior to filing his application, notwithstanding the law was not enforced in that particular community and was necessary for petitioner to keep his place of business open to retain his trade, and notwithstanding he had ceased violating the law for some months before filing his petition, which was more than two years before the hearing thereon was not a person of good moral character. See also Ex Parte Elson, D.C.Tex.1924, 299 F. 352; In re Bonner, D.C.Mont.1922, 279 F. 789; In re Swenson, D.C.Or.1945, 61 F.Supp. 376; In re Taran, D.C.Minn. 1943, 52 F.Supp. 535. Violations of liquor laws have been the basis of suits by the government for cancellation of previously issued certificates of citizenship. United States v. Palmeri, D.C. N.Y.1943, 52 F.Supp. 226.

Friends and officials who know petitioner are of the opinion that he would make a good citizen, and ought to be admitted to citizenship. In Marcantonio v. United States, supra, Judge Parker made it clear that the test is not what the people or even the judge thinks about him as a future citizen, but whether he has established good moral character during the five-year period.

The designated naturalization examiner has filed findings of fact and conclusions of law, and recommends that the petition be denied.

When petitioner's conduct, including the illegal sale of liquor, is con-

sidered as a whole, he has failed to meet the burden of proof of good moral character required by law. The petition for naturalization is denied.

An order may be presented effectuating the views expressed above, which are now adopted as the findings of fact and conclusions of law of the Court.