**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 9, 2012

No. 11-20324
Summary Calendar

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JOSE CORDERO,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CV-1232

Before GARZA, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:[*]

This case involves the question of whether the district court erred in granting the Government's summary judgment motion resulting in the denaturalization of Defendant-Appellant Jose Cordero ("Cordero") because his citizenship was illegally procured.

The operative facts are undisputed. In 1983, Cordero divorced his first wife, Hazel Chavez-Guell ("Chavez-Guell"), and entered into a sham marriage

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

with Elsa Reyna Calderon ("Calderon"), a United States citizen, in order to acquire legal permanent resident ("LPR") status in the United States. Cordero continued to live with Chavez-Guell in Houston during the entirety of his "marriage" to Calderon, who resided in Corpus Christi. After successfully acquiring LPR status, Cordero divorced Calderon and remarried Chavez-Guell. In 1988, Cordero was served with notice of the Government's intent to rescind his LPR status on the basis of marriage fraud. In 1989, after a rescission hearing at which Cordero testified on his own behalf, the Immigration Judge ("IJ") issued an order rescinding Cordero's LPR status on the ground that Cordero's "marriage" to Calderon was "a marriage of convenience for immigration purposes." Cordero appealed the IJ's decision to the Board of Immigration Appeals (the "BIA"). The BIA affirmed the IJ's decision and dismissed Cordero's appeal on June 17, 1993. Cordero never appealed the BIA's decision and has not sought to reopen it.

Despite the fact that the IJ had rescinded his LPR status and his appeal had not yet been resolved, Cordero submitted an application for naturalization on June 16, 1993, one day before the BIA's dismissal of his appeal. In his application, Cordero swore that he had never given false testimony for the purpose of obtaining any immigration benefit. He later failed to disclose to the interviewing immigration official that his LPR status had been rescinded and that his BIA appeal was pending. In February 1994, Cordero was naturalized and received his certificate of naturalization.

The district court granted summary judgment against Cordero on the ground that his naturalization had been illegally procured because he failed to satisfy a statutory requirement, specifically, that an individual be lawfully admitted to the United States for permanent residence. *United States v. Cordero*, No. H-09-1232, 2011 WL 1542669, at *3 (S.D. Tex. Apr. 21, 2011). Cordero raises only one argument on appeal. He contends that because he did

not receive notice of the BIA's dismissal of his appeal until after he became naturalized, his LPR status rescission was not "final." Thus, in Cordero's view, he met the LPR requirement for naturalization when he applied and was granted citizenship.

Cordero candidly admits that he has no authority whatsoever for his argument that a BIA decision is not "final" until it is received by the parties.[1] Thus, he abandons his sole issue by failing to brief it adequately. "Questions posed for appellate review but inadequately briefed are considered abandoned." *Dardar v. Lafourche Realty Co., Inc.*, 985 F.2d 824, 831 (5th Cir. 1993).

Even were we to consider the argument, we conclude that it fails on the merits. Pursuant to 8 U.S.C. § 1451(a), an order admitting a person to United States citizenship may be revoked and the certificate of naturalization cancelled if, *inter alia*, the order and certificate of naturalization were illegally procured. Because "there must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship," the order and certificate of naturalization are deemed "illegally procured" if the applicant fails to comply with any of the prerequisites. *Fedorenko v. United States*, 449 U.S. 490, 506 (1981) (citations omitted). In other words, if an applicant procures citizenship "when prescribed qualifications have no existence in fact, it is illegally procured[.]" *United States v. Ginsberg*, 243 U.S. 472, 475 (1917) ("No alien has the slightest right to naturalization unless all statutory requirements are complied with[.]"); *see also United States v. Beda*, 118 F.2d 458, 459 (2d Cir. 1941) ("Proof of fraud in obtaining a certificate is unnecessary to justify

---

[1] Cordero does not seek to reopen the BIA proceeding for lack of notice (indeed, he does not contest that his marriage was a sham and, therefore, the IJ ruled correctly), so cases addressing that situation are inapposite. Indeed, in his brief, Cordero does not even attempt to argue that he would have done anything differently had he received notice of the BIA's dismissal of his appeal. Moreover, even after learning of the BIA's dismissal of his appeal, Cordero did not seek judicial or other review.

cancellation, illegality alone will subject a certificate to successful attack.") (citations omitted).

Since nothing in the statutes or regulations suggests that Cordero's argument about "finality" has weight, we conclude that he "illegally procured" citizenship as he was not an LPR on the date of his naturalization.[2] Accordingly, having found no error warranting reversal in the district court's determination that Cordero's naturalization was illegally procured, we AFFIRM.

---

[2] "[T]he right to acquire American citizenship is a precious one," and "once citizenship has been acquired, its loss can have severe and unsettling consequences." *Fedorenko*, 449 U.S. at 505-06 (citations omitted). We caution, then, that our decision rests on the circumstances here presented. We need not address the situation where an individual contests the underlying facts, claims not to have received notice of the BIA's dismissal of his case, and seeks to re-open BIA proceedings.